

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
#### Case No.: 03-21063-CIV-Altonaga/Bandstra

DAVID ALLEN,

    Plaintiff

vs.

CITY OF MIAMI, a Municipal corporation
in Miami-Dade County, State of Florida, et. al

    Defendants.

_____/

```
FILED by _____ D.C.
DKTG

     DEC 21 2004

   CLARENCE MADDOX
  CLERK U.S. DIST. CT.
  S.D. OF FLA. - MIAMI
```

## THIRD AMENDED COMPLAINT

COMES NOW, Plaintiff David Allen, by and through his undersigned counsel and complains against the above named Defendants and for this cause of action states as follows:

### JURISDICTION

1.    That this action arises under the United States Constitution particularly under the provisions of the Fourth and Fourteenth Amendments and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Section 1983 and 1988.

2.    That this Court has jurisdiction over this cause under the provisions of Title 28 of the United States Code, Sections 1331 and 1343, and pendent jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims under provisions of Title 28 of the United States Code, Section 1367.



3.    That each and all of the acts of Defendants collectively and each individually as herein set forth below, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the City of Miami, County of Miami-Dade, State of Florida, and by virtue of and under the authority of the employment of each of the above-named Defendants as police administrative officials and/or police officers and with the City of Miami, County of Miami-Dade, State of Florida.

4.    That the City of Miami, through the City of Miami Police Department and its Chief of Police, is responsible for and does in fact, hire, train, supervise and instruct police officers and detention officers of all grades in the performance of their duties.

## THE PARTIES

5.    Plaintiff David Allen was at all relevant times a citizen of the City of Miami, State of Florida.

6.    Defendant City of Miami is a municipal corporation, formed pursuant to the laws of the State of Florida, and one of the functions of the City of Miami is to organize, operate, staff and supervise a police force.

7.    Defendant Tapanes based on information and belief is a resident of Miami-Dade County, State of Florida, and is or was employed as a police officer for the City of Miami on July 27, 2000.

8.    Defendant Camacho based on information and belief is a resident of Miami-Dade County, State of Florida, and is or was employed as a police officer for the City of Miami on July 27, 2000.

9.    Defendant Gonzalez based on information and belief is a resident of Miami-Dade County, State of Florida, and is or was employed as a police officer for the City of Miami on

2

July 27, 2000.

10.     Defendant Calvar based on information and belief is a resident of Miami-Dade County, State of Florida, and is or was employed as a police officer for the City of Miami on July 27, 2000.

11.     Defendant Andreu based on information and belief is a resident of Miami-Dade County, State of Florida, and is or was employed as a police officer for the City of Miami on July 27, 2000.

## COMMON ALLEGATIONS

12.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through and including 11 of this Third Amended Complaint.

13.     On July 27, 2000, at approximately 5:00 p.m. Plaintiff stopped his truck on William Avenue a residential street in the Coconut Grove section of the City of Miami.  Plaintiff stood on the street between his driver's side door and the seat of his truck, urinating.  At this time and place, Defendant City of Miami and their employees, including Defendants Tapanes and Camacho, were working as undercover police officers in an unmarked car wearing civilian clothes and were transporting a prisoner after having just completed an undercover sting.

14.     Defendant Camacho, driver of the unmarked car and stopped directly parallel to Plaintiff and his truck, drew his firearm and pointed it at Plaintiff.

15.     Defendant Camacho pointed his firearm at Plaintiff; Plaintiff leaned away from the direction of Defendant Camacho's gun.

16.     That at or about that time, Defendant Tapanes exited the unmarked car and pointed his firearm at Plaintiff.

17.     That after exiting the vehicle, Defendant Tapanes and/or Camacho fired his gun; a

3

bullet entered Plaintiff's driver side window, ultimately striking and wounding Plaintiff's arm.

18.    Plaintiff's truck was not moving at the time of the first shot referenced in paragraph 17, above.

19.    That since Plaintiff could not reasonably conclude Defendants Tapanes and Camacho were police officers, Plaintiff began pulling away from the location where he was parked for his own safety.

20.    Defendant Tapanes fired his gun a Third time as Plaintiff was leaving the scene.

21.    Defendant Tapanes's bullet struck Plaintiff's truck in the top rear window of the cab on the driver's side.

22.    Coincident with the above described incident, Plaintiff was arrested for aggravated assault (of Defendant Tapanes) with a deadly weapon (his truck) and no other crime.

23.    The arrest of Plaintiff was made without any legal justification since Plaintiff did not threaten Defendant with his truck.

24.    The arrest and apprehension of Plaintiff for the offense referred to in paragraph 22, was a pretext to justify the unlawful shooting of Plaintiff by Defendants.

25.    That Defendant Gonzalez, as Commander as the Homicide Unit was called upon to investigate this incident regarding a police officer involved shooting by the alleged 'jump out boys' referring to undercover police officers Defendants Tapanes and Camacho.

26.    That during the so called 'crime scene investigation' that followed, Defendant Andreu responded to the scene at the request of Defendant Gonzalez who was the ranking officer in charge of this police officer involved shooting.

27.    That during the so called 'crime scene investigation' that followed, Defendant Calvar responded to the scene and was responsible for gathering and obtaining witness

4

statements, including taking the statement of witness Christopher Jones.

28.　　That at all relevant times, Defendant Gonzalez was a commander of the homicide unit who responded to the scene and was the direct supervisor of Defendants Andreu and Calvar.

29.　　That Defendant Gonzalez was the officer in charge of the so-called crime scene investigation and managed and participated in the investigation and therefore was under an obligation to (i) ensure that the so-called crime scene was properly secured, (ii) that all relevant evidence was obtained and accounted for; (iii) ensure that police department policies and procedures were followed, including the testing of all officer guns used or alleged to have been used during an incident where an officer has or may have fire his weapon; (iv) ensure all witness were interviewed and (v) review all reports to ensure the shooting was lawful under City of Miami policy.

30.　　That after the incident, an investigation commenced into the facts and circumstances giving rise to the incident that is the subject of this lawsuit.

31.　　That during the investigation, witnesses provided statements that contradicted the version of the incident offered by Defendants Tapanes and Camacho.

32.　　That during the investigation, certain witnesses provided statements that three gun shots were fired, however, no officer ever ordered that Defendant Camacho undergo testing for gunpowder residue or tested his weapon;

33.　　That during the investigation, certain witnesses provided statements that a third bullet casing was circled and marked by police, but such casing was never collected and preserved.

34.　　That certain witnesses offered to provide testimony that contradicted the version of facts offered by Defendants Tapanes and Camacho, however, such witnesses were told to keep

5

quiet or they would be arrested.

35.    No weapon or contraband of any kind was possessed by Plaintiff at the time of the incident described herein.

36.    That days later Evidence Technician Fabrice Nelson went to the residence of the Plaintiff to retrieve a pistol that was planted in Plaintiff's truck by a member of the Homicide Unit investigative team.

37.    On February 14, 2002, Plaintiff was found not guilty of the charge of aggravated assault with a deadly weapon by a jury of his peers.

38.    That eleven Miami police officers including Defendant Gonzalez was charged in a superseding indictment on January 22, 2003 for being a part of a conspiracy to obstruct justice and obstruction of justice by planting guns, lying about their actions, and witness intimidation in connection with four police officer involved shootings that occurred prior to this incident.

39.    That on March 20, 2003, four Miami police officers who served on the street narcotics unit or crime suppression team or both or among those units were found guilty of conspiracy to obstruct justice and obstruction of justice.

40.    That on April 4, 2004, Defendant Gonzalez was convicted of three counts of conspiracy to obstruct justice and obstruction of justice.

41.    That in total, seven Miami police officers were found guilty of federal obstruction charges while two other Miami officers pled guilty to obstruction of justice and deprivation of civil rights.

42.    That all of the criminal charges referenced above concerned police officer involved shootings and subsequent attempts by the homicide unit or others to cover up the true facts and circumstances surrounding the shootings to justify or otherwise exonerate the officers

6

involved.

43.     That Defendant Calvar on July 27, 2000, took the statement of witness Christopher Jones who was in the backseat of the Tapanes/Camacho vehicle at the time of this shooting.

44.     That witness Jones at that time had a considerable prior criminal history.

45.     That Defendant Calvar offered to release witness Jones and drop the obstruction of justice charge for which he was arrested on July 27, 2000 so long as Jones testified that Plaintiff was trying to run Defendant Tapanes over with Plaintiff's truck.

46.     That Jones told Calvar that was not what happened and the Tapanes was in no danger and had no need to shoot at the Plaintiff.

47.     That Defendant Calvar knowing that it was illegal nonetheless suborned the perjury of witness Jones in exchange for his release.

48.     That Jones was released that night, never taken to jail and the obstruction case was *nolle prossed.*

49.     That the State Attorney's office has no file relating to the Christopher Jones arrest for obstruction on July 27, 2000.

50.     That Defendant Tapanes has testified that he used deadly force because Plaintiff was trying to run him over.

51.     That this investigation taken with the police involved shootings investigations that resulted in seven convictions and two pleas of guilty to charges relating to obstruction of justice and violations of civil rights demonstrate the environment that existed in the City of Miami police department that was the driving force behind the violation of Plaintiff's civil rights.

52.     The foregoing actions and/or omissions by Defendants caused Plaintiff to suffer

7

injury, including permanent bone, nerve, cosmetic and mental health injury and to incur uninsured medical expenses, lost wages and loss of earning capacity, severe and permanent disfigurement as well as pain and suffering.

53.    Pursuant to Florida Statute 768.28, Plaintiff caused to be delivered to Mayor Joe Carollo of the City of Miami, a written claim for injuries suffered at the hands of the City of Miami. Such letter was received by Mayor Carollo's office on or about September 9, 2000.

54.    Pursuant to Florida Statute Section 768.28, Plaintiff caused to be delivered to the Florida Department of Insurance, Thomas Gallagher, a written claim or injuries suffered. Such letter was received by the Florida Department of Insurance on our about September 9, 2000.

55.    Over six months have passed since this submission of such claim by Plaintiff, but each agency referenced above has failed to dispose of such claim.

56.    The City of Miami has specifically waived its sovereign immunity pursuant to Florida Statute Section 768.28 and Miami-Dade County Code of Ordinances Section 8.03.

## COUNT I
## CONSTITUTIONAL DEPRIVATIONS
## CITY OF MAIMI

57.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 56 of this Third Amended Complaint.

58.    This is an action for monetary damages to under the Constitution of the United States as secured to the Plaintiff under the Fourth and Fourteenth Amendment, and the laws of the United States, including 42 USC §1983 and §1988 and the Constitution and laws of the State of Florida against the City of Miami.

59.    That Defendant City of Miami failed to develop, implement, monitor and enforce

8

policies and procedures relating to the proper means and methods for:

      a.      collecting and preserving evidence;

      b.      the constitutional limits of the use of deadly and/or excessive force by its police officers;

      c.      investigating incidents relating to the discharge of a police officer's firearm, which failures reflect a deliberate indifference to the rights of the Plaintiff and were a direct and proximate cause of Plaintiff's injury;

      d.      eradicating a systemic problem relating to the routine use of unlawful excessive force by City of Miami police officers, and

      e.      eradicating a systemic problem relating to the routine failure to properly investigate such incidents involving allegations of unlawful excessive force by City of Miami police officers and discipline officers who violate the rights of citizens; and

      f.      eradicating a systemic problem relating to the routine failure to discipline officers who use unlawful excessive force and who thereby violate the rights of citizens; and

      g.      eradicating a systemic problem whereby elaborate efforts are undertaken to cover-up police wrongdoing through various tactics including the filing of knowingly false or materially misleading reports, the willful or grossly negligent failure to gather all relevant evidence especially where it may show officer mistake or wrongful acts, direct or tacit approval of witness intimidation which such information may show officer mistake or wrongful acts, the controlling, filtering and gathering of information to avoid a finding of officer wrongdoing, eliciting false statements from individuals such as from the person who was in the back of Defendant Tapanes's and Camacho's unmarked car.

9

60.   That the Constitutional violations by City of Miami under the Fourth and Fourteenth Amendment include the following specific willful acts committed in bad faith or with a malicious purpose:

a.   authorizing Defendants Andreu, Calvar and Gonzalez who each had an active role in responding to and managing the crime scene investigation, to also manage and/or supervise (directly or indirectly) the investigation into the circumstances of such shooting, calling into serious question the thoroughness, fairness and impartiality of such investigation;

b.   failing to supervise and/or train officers in the proper procedure for obtaining unbiased witness statements at the scene of an alleged crime, including those statements that may have been exculpatory as to the Plaintiff in the criminal trial that occurred subsequent to the subject events herein, for example, witness statements that were contradictory to Defendant Camacho's or Tapanes's version of the incident were discouraged, discounted or ignored.

c.   failing to establish and/or to follow established policies and procedures relating to the collection and preservation of evidence (including the collection of all bullet casings, conducting a weapons and residue check on all officers where weapons are fired);

d.   failing to adequately discipline, discharge or impartially investigate acts or omissions of Defendants Tapanes and/or Camacho who are alleged to have used unlawful excessive force, particularly upon the Plaintiff;

e.   failing to discipline, discharge or impartially investigate acts or omissions of Defendant Calvar who suborned perjured testimony of witness Jones in exchange for Jones's release from custody to support Defendant Tapanes's and Camacho's version of the incident;

f.   failing to hire individuals whose character and personality would not pose

10

a potential danger to residence of the City of Miami and Plaintiff;

       g.    failing to discipline, instruct, supervise or control the conduct of its officers, including by Defendants Andreu, Calvar and/or Gonzalez or their subordinate officers, when such officers violate the rights of citizens such as the Plaintiff herein, thereby failing to discourage acts or omissions that lead and contributed to Plaintiff's damages;

       h.    retaining any one or more of Defendants Andreu, Calvar, Gonzalez, Tapanes, and/or Camacho who because of violations by one or more of them of the constitutional rights of citizens, pose a danger to such citizens such the as Plaintiff herein;

       i.    failing to create a system to fairly and impartially review incidents of abuse of lawful authority such as illegal shootings or the illegal use of force and unlawful detentions and/or arrests among other things, by police officers, and complaints thereof thereby resulting in a de facto policy or custom of the City of Miami to tolerate such acts by its police officers, including officers Andreu, Calvar, Gonzalez, Tapanes, and/or Camacho which was the driving force behind the violation of Plaintiff's constitutional rights;

       j.    failing to supervise and/or train officers such as Defendants Andreu, Calvar, and Gonzalez in the conducting a thorough and fair investigation of events involving the alleged use of unlawful excessive or deadly use force by Defendants Tapanes and/or Camacho, which, if the foregoing had occurred, they City of Miami would not have continued a criminal prosecution of the Plaintiff for his alleged unlawful activity;

       k.    that the environment within the City of Miami police department was such that when police officer shootings were investigated by the homicide investigative unit the investigation would involve witness intimidation, planting of weapons, suborning perjury, ignoring exculpatory evidence or witness statements all designed to exonerate the involved

11

officer which amounted to a *de facto* policy or custom which was the driving force behind the violation of Plaintiff's civil rights.

61.     The foregoing incidents were grossly negligent and reckless acts that amounted to a deliberate indifference to Plaintiff's constitutional rights which shocks the conscience and offends the community's sense of fair play and decency and future police misconduct is substantially certain to result.

62.     That as a result of the foregoing, the City of Miami denied Plaintiff due process as secured to him through the Fourteenth Amendment Due Process Clause of the U.S. Constitution.

63.     That as a result of the foregoing, the Plaintiff was deprived of the right to be free from unlawful searches and seizures and the infliction of excessive summary punishment.

64.     That as a result of the foregoing, Plaintiff is entitled to compensatory damages including, but not limited to special damages such as medical expenses, lost wages, loss of earning capacity, property damages, as well general damages such as pain and suffering, emotional distress, injury to reputation, serious permanent injury, disfigurement and humiliation, and reasonable attorneys fees and costs.

WHEREFORE,  Plaintiff  prays  for  relief  for  the  above  constitutional infringements in the amount of:

a.     Compensatory damages for medical expenses, lost wages, lost earnings, future loss of income, property damages and damages for pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00.

b.     Reasonable attorneys fees and costs; and

c.     Such other relief as this Court shall deem just and equitable.

12

## COUNT II
## CONSTITUTIONAL DEPRIVATIONS AGAINST DEFENDANTS ANDREU, CALVAR, GONZALEZ, TAPANES AND CAMACHO UNDER THE FOURTH AND FOURTEENTH AMENDMENTS

65.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 56 this Third Amended Complaint.

66.     This is an action for monetary damages to under the Constitution of the United States as secured to the Plaintiff under the Fourth and Fourteenth Amendment of the U.S. Constitution, and the laws of the United States, including 42 USC §1983 and §1988 and the Constitution and laws of the State of Florida against each of Defendants Andreu, Calvar, Gonzalez, Tapanes and Camacho as more particularly described below.

67.     That Defendants Tapanes and Camacho are not entitled to qualified immunity for the acts and/or omissions that caused harm to Plaintiff and his property since they knew or should have known that the following acts and/or omissions (among others enumerated herein) violated the Plaintiff's constitutional rights:

    a.     pointing and firing a firearm at the Plaintiff without case or justification;

    b.     fabricating a basis for justifying the unlawful use of force which resulted in the unlawful arrest, detention and prosecution of the Plaintiff.

68.     That Defendant Andreu is not entitled to qualified immunity for the acts and/or omissions that caused harm to Plaintiff and his property since they knew or should have known that the following acts and/or omissions (among others enumerated herein) in which they each participated in whole or in part, violated the Plaintiff's constitutional rights by failing to properly conduct an impartial, fair and complete crime scene and post-incident investigation which lead to (i) the complete disregard of exculpatory statements from non-interested witnesses; (ii) loss or destruction of potentially exculpatory evidence to be described below, (iii) participating or

13

condoning witness intimidation so as to discourage or prevent the discovery of information that

might not support Defendants Tapanes's and Camacho's version of the facts giving rise to the

incident; (iv) that he knew or should have known that a gun was planted on Plaintiff's truck to

justify Defendant Tapanes's unlawful use of deadly force; (v) that he knew or should have

known that Christopher Jones's testimony was suborned perjury in exchange for his release;

thereby causing the unlawful arrest and prosecution of the Plaintiff.

      69.    That Defendant Gonzalez is not entitled to qualified immunity for the acts and/or

omissions that caused harm to Plaintiff and his property since they knew or should have known

that the following acts and/or omissions (among others enumerated herein) in which they each

participated in whole or in part, violated the Plaintiff's constitutional rights by failing to properly

conduct an impartial, fair and complete crime scene and post-incident investigation which lead to

(i) the complete disregard of exculpatory statements from non-interested witnesses; (ii) loss or

destruction of potentially exculpatory evidence to be described below, (iii) participating or

condoning witness intimidation so as to discourage or prevent the discovery of information that

might not support Defendants Tapanes's and Camacho's version of the facts giving rise to the

incident; (iv) that he knew or should have known that a gun was planted on Plaintiff's truck to

justify Defendant Tapanes's unlawful use of deadly force; (v) that he knew or should have

known that Christopher Jones's testimony was suborned perjury in exchange for his release;

thereby causing the unlawful arrest and prosecution of the Plaintiff.

      70.    That Defendant Calvar is not entitled to qualified immunity for the acts and/or

omissions that caused harm to Plaintiff and his property since they knew or should have known

that the following acts and/or omissions (among others enumerated herein) in which they each

participated in whole or in part, violated the Plaintiff's constitutional rights by failing to properly

14

conduct an impartial, fair and complete crime scene and post-incident investigation which lead to (i) the complete disregard of exculpatory statements from non-interested witnesses; (ii) loss or destruction of potentially exculpatory evidence to be described below, (iii) participating or condoning witness intimidation so as to discourage or prevent the discovery of information that might not support Defendants Tapanes's and Camacho's version of the facts giving rise to the incident; (iv) that he knew or should have known that a gun was planted on Plaintiff's truck to justify Defendant Tapanes's unlawful use of deadly force; (v) that he knew known that Christopher Jones's testimony was suborned perjury in exchange for his release; thereby causing the unlawful arrest and prosecution of the Plaintiff.

71.    Defendants Andreu, Calvar, Gonzalez and Camacho and Tapanes violated Plaintiff's rights by and through the following willful acts committed in bad faith or with a malicious purpose as more specifically set forth below:

a.    when Defendants Tapanes and Camacho used unwarranted deadly force when dressed in plain clothes, stopped their unmarked car beside Plaintiff's truck with guns already drawn and pointed at the Plaintiff who was urinating within the protected confines of his truck and truck door;

b.    when Defendants Tapanes and Camacho moved toward a startled Plaintiff with guns drawn and pointed them at Plaintiff without having properly identified themselves as police officers;

c.    when Defendants Tapanes fired two shots from his weapon at Plaintiff causing one bullet to strike the Plaintiff and another to narrowly miss Plaintiff's head and each causing physical and emotional injury and property damage;

d.    when upon information and belief Camacho fired his weapon at Plaintiff

15

and at close range when Plaintiff, who could not reasonably believe Camacho and Tapanes were police officers, attempted to escape injury;

        e.     when Defendants Tapanes and Camacho caused Plaintiff to suffer physical injury, property damages and loss, permanent disfigurement, emotional distress, lost income, lost earning capacity, and incur medical expenses as a result of their actions;

        f.     when Defendants Tapanes and Camacho caused Plaintiff to suffer, in addition to subparagraph 71.e. above, mental anguish, embarrassment, humiliation and disgrace as a result of the subject incident, subsequent hospitalization and later a criminal trial of which he was acquitted of all charges;

        g.     when the Tapanes and Camacho caused Plaintiff to be arrested, charged with a crime (assault with a deadly weapon), deprived him of his liberty and property and prosecuted, to justify their unlawful actions;

        h.     when Defendants Tapanes and Camacho inflicted excessive summary punishment upon an individual who was discretely relieving himself on the side of the road;

        i.     when Defendants Tapanes and Camacho fabricated a story or mislead investigators to justify an unlawful use of excessive force which lead to Plaintiff's arrest and prosecution for felony for which he was later acquitted;

        j.     when Defendants Tapanes and Camacho knew of the perjured testimony of Christopher Jones who was in the back of their unmarked car and in custody in exchange for the promised release of such witness;

        k.     when Defendants Camacho and Tapanes failed to follow policies and procedures relating to proper identification of officers working as undercover police officers so as not to unnecessarily surprise and cause injury and harm to citizens;

16

l.      when Defendant Gonzalez, the superior and supervising officer at the crime scene investigation did not order the testing of Defendant Camacho for residue or of Defendant Camacho's gun in light of witness statements that Defendant Camacho may have fired his weapon;

m.      when Defendant Calvar, after taking post incident statements did not order testing of Defendant Camacho's gun in light of witness statements that Defendant Camacho may have fired his weapon;

n.      when Defendant Andreu filed a materially misleading or knowingly false police report that stated that all witnesses concurred with Defendant Camacho's and Tapanes's version of the facts of the incident when, in fact, there were statements that differed;

o.      when Defendant Calvar who was present at the crime scene investigation took post incident witness statements attempting to control information rather than to elicit truthful unbiased information;

p.      when Defendant Andreu participated in or was present together with Defendant Calvar when certain post incident witness statements were taken, in an effort to control information rather than elicit truthful unbiased information;

q.      when Defendant Gonzalez directly engaged in or tacitly approved the use of witness intimidation tactics by crime scene investigators to silence the contradictory statements of eyewitnesses;

r.      when Defendants Andreu and Gonzalez purposefully ignored eyewitness statements that did not support Defendants Camacho's and Tapanes's version of the facts;

s.      when Defendants Andreu and Calvar failed to take the statements of or did not record the statements of known witnesses identified in police reports, which statements may

17

have been exculpatory to the Plaintiff;

72.     That each act described above each singly and collectively amounted to a deliberate indifference to Plaintiff's constitutional rights and that future misconduct is substantially certain to result.

73.     That as a result of the foregoing, Plaintiff was unlawfully deprived of his civil rights as guaranteed under the US Constitution is entitled to compensatory damages including, but not limited to special damages such as medical expenses, lost wages, loss of earning capacity, property damages and loss as well general damages such as pain and suffering, emotional distress, injury to reputation, serious permanent injury, disfigurement and humiliation, and reasonable attorneys fees and costs.

WHEREFORE, Plaintiff prays for relief for the above constitutional infringements in the amount of:

a.     Compensatory damages for medical expenses, lost wages, lost earnings, property damages, future loss of income, pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00.

b.     Reasonable attorney's fees and costs;

c.     Such other relief as this Court shall deem just and equitable;

d.     Punitive damages under 42 USC §1983.

## COUNT III
## NEGLIGENCE BY THE CITY OF MIAMI

74.     Plaintiff hereby incorporates by reference the following paragraphs from this Third Amended Complaint.  1 through 11, and 13 through 56 each inclusive.

18

75.      This is an action under the principles of common law and the statutory laws of the State of Florida alleging negligence by the City of Miami.

76.      That at all times relevant to the Third Amended Complaint, Defendant City of Miami owed a duty of care to the Plaintiff to abide by Federal and Florida laws with regard to Plaintiff's right not to be deprived of his liberty and property without due process of law and his right to be free from unlawful excessive force by those acting under color of law.

77.      That at all relevant times, Defendant City of Miami was responsible or the negligent acts of its employees, officers and agents, including Defendants Andreu, Calvar, Gonzalez, Tapanes and Camacho provided such acts were not committed willfully, in bad faith or with a malicious purpose.

78.      That the City of Miami by and through Defendants Andreu, Calvar, Gonzalez, Tapanes and Camacho breached the duty owed to the Plaintiff by and through the following acts -- arguing in the alternatively, and assuming the same to have not been done willfully, or committed in bad faith or with a malicious purpose:

a.      when Defendant Camacho, driver of an unmarked car stopped directly parallel to Plaintiff and his truck, negligently drew his firearm and continued pointing it at Plaintiff using deadly force without legal cause or justification;

b.      when Defendant Tapanes negligently pointed his firearm at Plaintiff using deadly force without legal cause or justification;

c.      when after exiting his vehicle, Defendant Tapanes negligently fired his gun upon the Plaintiff causing a bullet to enter Plaintiff's driver side window which struck and wounded the Plaintiff;

d.      when Defendant Tapanes negligently fired his gun a Third time as

19

Plaintiff, who could not reasonably conclude that Defendants Tapanes and Camacho were police officers, began pulling away from the location his car was parked;

      e.     when Defendant Tapanes negligently cause the bullet from his gun to strike Plaintiff's truck, narrowly missing the Plaintiff's head;

      f.     when either Defendant Tapanes or Camacho negligently fired a third time upon Plaintiff as he attempted to reach safety;

      g.     when Defendants Gonzalez and Andreu who were responsible for locating, collecting and preserving all known evidence, through his negligence or the negligence of his subordinates failed to collect and present a third bullet casing which may have been fired by Defendant Camacho or Tapanes;

      h.     when Defendants Andreu and Gonzalez, the superior and supervising officers at the crime scene investigation negligently failed to order the testing of Defendant Camacho for residue or of Defendant Camacho's gun in light of witness statements that Defendant Camacho may have fired his weapon;

      i.     when Defendant Calvar, after taking post incident statements negligently failed to order testing of Defendant Camacho's gun in light of witness statements that Defendant Camacho may have fired his weapon;

      j.     when Defendant Andreu through negligence filed a materially misleading or false police report that stated that all witnesses concurred with Defendant Camacho's and Tapanes's version of the facts of the incident when, in fact, there were statements that differed;

      k.     when Defendant Calvar negligently conducted a post incident investigation and failed to gather all relevant witness testimony;

      l.     when Defendant Gonzalez negligently supervised his officers in the proper

Scanned Image - 1:03CV21063 Document 101 page 23 Tue Dec 28 22:11:00 2004

handling of witnesses to ensure a complete, fair and impartial investigation;

m.      when Defendants Andreu and Gonzalez negligently overlooked or disregarded eyewitness statements that contradicted Defendants Camacho's and Tapanes's version of the facts;

n.      when Defendants Andreu, and/or Calvar negligently failed to take the statements of or did not record the statements of known witnesses identified in police reports, which statements may have been exculpatory to the Plaintiff;

79.     All of these actions and/or omissions by Defendants caused Plaintiff to suffer injury, including permanent bone, nerve, cosmetic and mental health injury and to incur uninsured medical expenses, lost wages and loss of earning capacity, severe and permanent disfigurement as well as pain and suffering.

80.     That as a direct and proximate result of the foregoing allegations, the Plaintiff a suffered damage previously enumerated herein and is entitled to damages as requested herein.

WHEREFORE, Plaintiff prays for relief for damages in the amount of:

a.      Compensatory damages for medical expenses, lost wages, lost earnings, property damages and losses, future loss of income, pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00; and

b.      Such other relief as this Court shall deem just and equitable.

## COUNT IV
## GROSS NEGLIGENCE BY ALL INDIVIDUAL DEFENDANTS

81.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 56 and paragraph 71 (inclusive of subparts).

21

82.     This is an action under the principles of common law and the statutory laws of the State of Florida alleging the gross negligence of each of Defendants Andreu, Calvar, Gonzalez, Tapanes and Camacho.

83.     That at all times relevant to this Third Amended Complaint, Defendants Andreu, Calvar, Gonzalez, Tapanes and Camacho owed Plaintiff a duty to abide by both Federal and Florida law with regard to Plaintiff's right not to be deprived of his liberty and property without due process of law and his right to be free from unlawful excessive force of those acting under color of law.

84.     That the actions and/or omissions by Defendants enumerated in paragraph 58 herein, including subparts, caused Plaintiff to suffer damages, including permanent bone, nerve, cosmetic and mental health injury and to incur uninsured medical expenses, lost wages and loss of earning capacity, severe and permanent disfigurement as well as pain and suffering.

85.     That as a direct and proximate result of these acts, Plaintiff sustained a loss and injury to his property, and injuries both physically and emotionally and suffered great mental anguish, embarrassment, humiliation, deprivation of liberty and disgrace as well as injury to his reputation and is entitled to compensatory damages.

WHEREFORE, Plaintiff prays for relief for damages in the amount of:

a.     Compensatory damages for medical expenses, lost wages, lost earnings, property damages and losses, future loss of income, pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00; and

b.     Such other relief as this Court shall deem just and equitable.

Plaintiff reserves the right to amend this Third Amended Complaint for damages to include a claim for punitive damages after a proffer has been made and approved by this Honorable Court

22

pursuant to Florida Statutes Section 768.72.

## COUNT V
## ASSAULT AND BATTERY AGAINST DEFENDANTS CAMACHO AND TAPANES

86.     Plaintiff hereby incorporates by reference the following paragraphs from this Third Amended Complaint: 1 through 5, 7, 8, and 13 through 24, inclusive, but only to the extent they relate to acts or omissions of Defendants Camacho and Tapanes.

87.     That this is an action under the principles of common law and the statutory laws of the State of Florida alleging assault and battery by Defendants Camacho and Tapanes upon the Plaintiff.

88.     That Defendants Tapanes and Camacho without privilege or consent committed a wrongful, harmful, unlawful and offensive touching of Plaintiff's body and his property by repeatedly shooting at him and striking him with a bullet in his elbow and causing damage to his truck and other property.

89.     That the actions of Defendants Tapanes and Camacho were intentional, willful, wanton, malicious and reckless and caused serious injury which resulted in injury to Plaintiff.

90.     That as a direct and proximate result of these acts, Plaintiff sustained property damages and losses and physical and emotional injuries and suffered great mental anguish, embarrassment, humiliation, deprivation of liberty and disgrace as well as injury to his reputation and is entitled to compensatory damages.

WHEREFORE, Plaintiff prays for relief for damages in the amount of:

        a.      Compensatory damages for medical expenses, lost wages, lost earnings, property damage and loss, future loss of income, pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00.

23

      b.      Such other relief as this Court shall deem just and equitable.

Plaintiff reserves the right to amend this Third Amended Complaint for damages to include a claim for punitive damages after a proffer has been made and approved by this Honorable Court pursuant to Florida Statutes Section 768.72.

### COUNT VI
### FALSE IMPRISONMENT & ARREST BY DEFENDANTS CAMACHO AND TAPANES

91.     Plaintiff hereby incorporates the following paragraphs from this Third Amended Complaint: 1 through 13, and 15 through 24, each inclusive, but excluding, however, any alleged acts or omissions by the City of Miami or any other individual defendant.

92.     That this is an action under the principles of common law and the statutory laws of the State of Florida alleging false imprisonment and arrest by Defendants Tapanes and.

93.     That on or about July 27, 2000, in Miami-Dade County, Florida, Defendants Tapanes and Camacho under color of law, engaged in one or more of the acts or omissions described in paragraph 58 (inclusive of subparts a. through k.) of this Third Amended Complaint, caused the Plaintiff to be unlawfully arrested and imprisoned, without any reasonable or probable cause whatsoever, depriving him of his liberty, contrary to Florida law and against the will of Plaintiff.

94.     That as a direct and proximate result of these acts Plaintiff sustained property damage and loss and injuries both physically and emotionally and suffered great mental anguish, embarrassment, humiliation, deprivation of liberty and disgrace as well as injury to his reputation.

95.     That as a direct and proximate result of these acts, Plaintiff sustained injuries both physically and emotionally and suffered great mental anguish, embarrassment, humiliation,

Scanned Image - 1:03CV21063 Document 101 page 27 Tue Dec 28 22:11:00 2004

deprivation of liberty and disgrace as well as injury to his reputation and is entitled to compensatory damages.

WHEREFORE, Plaintiff prays for relief for damages in the amount of:

a.   Compensatory damages for medical expenses, lost wages, lost earnings, property damages and loss, future loss of income, pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00; and

b.   Such other relief as this Court shall deem just and equitable.

Plaintiff reserves the right to amend this Third Amended Complaint for damages to include a claim for punitive damages after a proffer has been made and approved by this Honorable Court pursuant to Florida Statutes Section 768.72.

## COUNT VII
## MALICIOUS PROSECUTION BY DEFENDANT TAPANES

96.   Plaintiff hereby incorporates the following paragraphs from this Third Amended Complaint: 1 through 13, and 13 through 24, each inclusive, but excluding, however, any alleged acts or omissions by the City of Miami or any other individual defendant other than Tapanes.

97.   That this is an action under the principles of common law and the statutory laws of the State of Florida alleging malicious prosecution by Defendant Tapanes (excluding the City of Miami) by and through the acts described in Paragraph 71 (inclusive of subparts a. through k.) herein.

98.   On July 30, 2000, Plaintiff was charged with aggravated assault with a deadly weapon (his truck) and no other crime.

25

99.     On February 14, 2001, Plaintiff was found not guilty by a jury of his peers.

100.    Defendants named in this count did not have probable cause for prosecuting Plaintiff.

101.    Plaintiff with wrongfully charged with aggravated assault with a deadly weapon in retaliation against Plaintiff and as justification for Defendants Camacho and Tapanes's use of unlawful excessive force.

102.    That as a direct and proximate result of these acts, Plaintiff sustained property loss and damage and injuries both physically and emotionally and suffered great mental anguish, embarrassment, humiliation, deprivation of liberty and disgrace as well as injury to his reputation and is entitled to compensatory damages.

WHEREFORE, Plaintiff prays for relief for damages in the amount of:

a.      Compensatory damages for medical expenses, lost wages, lost earnings, property damages and loss, future loss of income, pain and suffering, emotional distress, permanent disfigurement and humiliation in excess of $1,000,000.00; and

b.      Such other relief as this Court shall deem just and equitable.

Plaintiff reserves the right to amend this Third Amended Complaint for damages to include a claim for punitive damages after a proffer has been made and approved by this Honorable Court pursuant to Florida Statutes Section 768.72.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as of right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by regular mail this December 8, 2004, to Alejandro Vilarello, City Attorney and Henry J. Hunnefeld, Assistant City Attorney, 945 Miami Riverside Center, 444 SW 2nd Avenue, Miami, FL 33130-1910 and Ronald J. Cohen, P.A., Ronald J. Cohen, Esq., 8100 Oak Lane, Suite 403, Miami Lakes, FL 33016-5876.

26

RESPECTFULLY SUBMITTED,

HOFFMAN & MORRIS, LLC
2655 North Ocean Drive, Ste. 300
Singer Island, Florida 33404
(561) 840-3406 (telephone)
(561) 840-3407 (facsimile)

By: _____
     John F. Hoffman, Esq.
     Florida Bar No.: 604755

27